**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

NJM:AP/RSB/ML
F. #2023R00837

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

May 23, 2024

By E-mail

The Honorable Sanket J. Bulsara
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Ryan Nieves, et. al.
Docket No. 24-MJ-392

Dear Judge Bulsara:

The government anticipates that the defendants in the above-referenced matter, [redacted] Ryan Nieves and Caleb Smith, will appear before Your Honor for arraignment today. The Government respectfully submits this letter in support of its application for a permanent order of detention because the defendants pose a grave danger to the community and are significant flight risks.

The defendants perpetrated a brazen and violent armed robbery of a bodega in Brooklyn by physically and aggressively holding the store clerk at gun point and stealing money from the cash register. As discussed below, there is no condition or combination of conditions that will reasonably assure the appearance of the defendants and the safety of the community. Accordingly, the defendants should be detained.

I. Background

A. September 23, 2023 – The Bodega Robbery[1]

As more fully described in the complaint, the defendants committed an armed robbery of a bodega on September 23, 2023 at approximately 4:23 p.m.

At approximately that time, [redacted] Nieves and Smith arrived at the bodega located on Franklin Avenue, in Brooklyn, New York. Nieves [redacted] entered the store where

[1] On December 1 and December 18, 2023, respectively, Nieves and Smith were indicted by the Kings County District Attorney's Office for this robbery and are currently under

Nieves physically restrained the store clerk at gunpoint, and [redacted] stole money from the cash register. Meanwhile, Smith stood at the entrance to act as the lookout. The robbery was captured on high-quality video surveillance. Still images taken from the video are depicted below showing the robbery unfolding:



[redacted] Smith (gray), Nieves (red pants).




Nieves holding a gun to the store clerk.

---

indictment for Robbery in the First Degree, in violation of New York State ("NYS") Penal Law ("PL") section 160.15(4) and related charges. As to Nieves, initially, the state court judge set $25,000 cash or $75,000 bond or partially secured bond for this incident. As discussed below, Nieves was already remanded on murder charges, so shortly after the initial appearance, nominal bail ($1) was set on the robbery for procedural reasons. As to Smith, bail was set in the amount of $5,000 cash, or $10,000 bond or partially secured bond. Smith posted bond on November 30, 2023, following his arrest on November 28, 2023. Of course, in New York State, the judge setting bail conditions may only consider risk of flight and is not permitted to consider dangerousness in the bail calculation. See NYS Crim. Procedure Law §530.20(1)(a).




[redacted] stealing money from cash register.



Smith acting as lookout.

The three defendants then fled from the store having stolen approximately $200, among other things. In addition to the crime being captured on video surveillance, each of the defendants has been identified as a participant through a variety of means. In particular, the victim identified Nieves in a photo array as the person who held him at gunpoint. As the three fled from the store, video surveillance captured additional identifying items such as the shoes and clothing worn by the defendants. For example, the still images below show Nieves (on the left) and [redacted] (on the right) [redacted]



Nieves

[redacted]

Smith was captured on video in flight from robbery. Incidentally, a good Samaritan observed the store employee chasing the defendants and stopped Smith in a nearby bodega. Video from that location clearly shows Smith's face in the same clothing as depicted in robbery video.



On September 22, 2023, the day before the robbery, video surveillance from the same bodega showed Nieves and [redacted] inside the store speaking with an employee (who was not the victim). In that video Nieves' face was unmasked and visible, and he was wearing what appeared to be the same distinctive shoes depicted above, the grey and white Air Jordan sneakers. [redacted]

Cell site data placed both Nieves [redacted] within the vicinity of the bodega at approximately the day and time of the robbery. [redacted]

B. <u>September 10, 2023 – Cumberland Street Smoke Shop Robbery</u>

Although currently uncharged in the complaint, Nieves and [redacted] committed an additional robbery a mere 13 days prior to the instant crime. On September 10, 2023 at approximately 7:10 p.m., Nieves, [redacted] and another individual committed an earlier robbery of a smoke shop located on Cumberland Street in Brooklyn, New York. Nieves and the other individual walked into the shop first and engaged the employee in a conversation. [redacted] Nieves, [redacted] and the third individual ran from the store.

The robbery was captured on video surveillance and was of such a quality that a law enforcement officer familiar with Nieves was able to identify him in the video. [redacted]

[redacted]

C. Additional Pending Criminal Charges

On October 27, 2023, Nieves was indicted by the Kings County District Attorney's Office for Murder in the Second Degree, in violation of NYS PL § 125.25, and related charges for the murder of an individual named Kyle Ford ("victim"), which took place on September 30, 2023—approximately one week after the robbery charged in the complaint Video surveillance in the murder investigation depicted Nieves, accompanied by three other individuals, approaching the victim and others. Nieves and another person fired multiple times, fatally shooting the victim and wounding two others non-fatally. Nieves is currently remanded in state custody on that matter.

[redacted]

C. Criminal Histories

Nieves has no adult criminal history.

[redacted]

Smith was adjudicated a youthful and juvenile offender in Kings County on September 19, 2018, for Robbery in the Second Degree, in violation of NYS PL §160.10, and received a sentence of three years' probation on October 31, 2018. He was also adjudicated a juvenile delinquent on March 19, 2018, following a conviction in Kings County Family Court for Attempted Robbery in the Third Degree, in violation of NYS PL § 110/160.05.

## II. Legal Standard

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. 18 U.S.C. § 3142(e). The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

Where, as here, defendants are charged with an offense under section 924(c)," 18 U.S.C. § 3142(e)(3)(B), a rebuttal presumption arises "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community."

Where a presumption of detention is applicable, the defendant bears the burden of rebutting that presumption by coming forward with evidence "that contradicts notions of flight risk or dangerousness." United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001). A bail package sufficient to overcome a presumption of flight may not be enough to overcome a presumption of dangerousness. United States v. Rodriguez, 950 F.2d 85, 89 (2d Cir. 1991).

Moreover, it is well established that, even if a defendant can meet his burden to rebut this presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight, the presumption favoring detention "does not disappear entirely, but remains a factor to be considered among those weighed by the district court." Mercedes, 254 F.3d at 436; see also United States v. Martir, 782 F.2d 1141, 1144 (2d Cir. 1986) (presumption of risk of flight); Rodriguez, 950 F.2d at 88 (presumption of dangerousness).

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, including whether the offense involves a controlled substance or a firearm; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the seriousness of the danger posed by the defendant's release. See 18 U.S.C. § 3142(g).

The possibility of a severe sentence is an important factor in assessing a defendant's likelihood of flight. See United States v. Jackson , 823 F.2d at 7; United States v. Martir, 782 F.2d at 1147 (defendants charged with serious offenses whose maximum combined terms created potent incentives to flee); United States v. Cisneros, 328 F.3d 610, 618 (l0th Cir. 2003) (defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond); United States v. Townsend,897 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight."); United States v. Dodge, 846 F. Supp. 181, 184-85 (D. Conn. 1994) (possibility of a "severe sentence" heightens the risk of flight).

Evidentiary rules do not apply at detention hearings and the government is entitled to present evidence by way of proffer, among other means. See 18 U.S.C. § 3142(f)(2); see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000). In the pre-trial context, few detention hearings involve live testimony or cross-examination. Most proceed on proffer. LaFontaine, 210 F.3d at 131. This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." Id. (internal quotation marks omitted); see also Mercedes, 254 F.3d at 437 ("[The defendant] has twice been convicted of weapon possession—one felony conviction, and one misdemeanor conviction. We find the district court committed clear error in failing to credit the government's proffer with respect to [the defendant's] dangerousness.").

Where a judicial officer concludes after a hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1).

## III. Argument

For the reasons described below, the defendants pose a significant risk of flight and a clear continuing danger to the community. In light of the charges against them, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the defendants' appearance in court or the safety of the community should they be released. As further described below, the defendants cannot overcome this presumption in light of the strength of the government's case. In fact, each of the Section 3142(g) factors weigh heavily in favor of the defendants' detention. Accordingly, a permanent order of detention should therefore be entered.

A. Nature of the Crimes Charged

As described in the complaint, the defendants scoped out their robbery target the day before, and then masterminded a plan so that each co-conspirator would play an important role to ensure the successful commission of this violent armed robbery. In addition to pointing the gun at the store clerk, Nieves physically held the victim down, while Smith ensured that the robbery would not be thwarted by acting as the lookout. These roles enabled [redacted] Nieves, to steal money and items from the bodega. That commercial establishment is located in a busy area in Brooklyn, and these defendants chose to commit the robbery at 4:23 p.m., a time of day when community members are out and about. Through their criminal conduct, the defendants put the lives of customers, employees and residents in the surrounding area in grave danger. Their actions also undermine the rights of the employees' right to earn a living, and citizens' right to go about their lives in their community free from the terror of violence, intimidation, and the use of firearms.

B. The Weight of the Evidence

The government's case is strong and evidence of the defendants' involvement in the robbery is powerful.

As described in the complaint, the robbery was captured on high-quality security video as well as a portion of the flight therefrom. [redacted] and Nieves were also seen on video the day before casing the establishment, and their distinctive clothing and cell-site data identify them as the individuals captured on camera on those specific dates and times. Indeed, Nieves was identified by the victim in a photo array. The defendants' social media accounts clearly depict their faces, depict them together, and depict the unique articles of clothing they wore during the robbery. Additionally, Nieves and [redacted] committed the robbery of the smoke shop on September 10, 2023, thereby demonstrating their affiliation and relationship of trust.

C. The Defendants' History and Characteristics

Defendant Nieves is currently remanded in state custody for a brazen murder in which he fatally shot someone and wounded three others. That shooting occurred only a week after the gunpoint robbery of the bodega on September 23, 2023, and two weeks after the smoke shop robbery on September 10, 2023.

[redacted]

Defendant Smith has been adjudicated twice, once as a youthful and juvenile offender and another time as a juvenile delinquent, for violent robbery crimes.

D. The Defendants Pose a Danger to the Community

As an initial matter, the defendants' conduct in the instant crime includes the use of a gun to overcome resistance to their commission of a violent robbery. They have shown no apparent concern for the time of day in which they committed this crime, or the innocent people,

beyond the store clerk, they exposed to danger. No condition or combination of conditions will reasonably assure the safety of community.

Given the seriousness of the conduct outlined above, their criminal contacts, as well as the defendants' apparent access to firearms, their release would present a significant danger to the community as well as an unacceptable risk of flight if they were to be released on any conditions.

IV. Conclusion

For the foregoing reasons, the government respectfully requests that the Court issue a permanent order of detention against the defendants. Regardless of the terms of any proposed bail package, there are no conditions or combination of conditions that will reasonably assure the appearance of the defendants as required and the safety of the community.

Respectfully submitted,

BREON PEACE
United States Attorney

By: /s/
Andy Palacio
Raffaela S. Belizaire
Megan Larkin
Assistant U.S. Attorney
(718) 254-7000

cc: Clerk of Court (SJB)
Defense Counsel (via ECF and E-mail)
Pretrial Services Officer (via E-mail)